Your Honor, this is the first case of the morning. Call 210-1101. People's State of Illinois v. James M. Fultz. On behalf of the apologist, Paul Rogers. On behalf of the athlete, Ms. Victoria Joseph. All sides are ready to proceed. You may proceed when you're ready. Good morning. May it please the court, counsel. This case raises two separate but overlapping issues. First, whether an outright reversal is required because the evidence was insufficient to sustain the defendant's conviction for aggravated battery against Officer Horton. And second, and alternatively, whether a new trial is required because of accumulative prejudice arising from three trial errors. Now, I said they were overlapping, and they're overlapping in this sense. If you disagree with the first contention, if you find that, given the median standard of review, the evidence is sufficient to sustain the conviction, the strength of the state's evidence is still relevant in deciding whether there's enough prejudice to require a new trial as a result of these three trial errors. I certainly don't want to neglect the argument about the sufficiency of the evidence. But today I want to make sure that I leave time to talk about the trial errors. And so I can't and I won't go through the argument on the sufficiency of the evidence in the same kind of detail that's in the briefs. The key point I want to emphasize with respect to that issue this morning is this. The state's case hinges entirely on the testimony of Officer Horton. His testimony is completely uncorroborated, and it conflicts with the testimony of the one witness who was really in the best position to corroborate Officer Horton and to provide consistent testimony with Officer Horton. And that one witness was Officer Braschka. Now, I realize, of course, that corroboration isn't a necessary condition for a conviction, but I think the lack of corroboration, particularly in these circumstances, is a relevant factor that any rational juror would consider. Now, the main omission from Officer Braschka's testimony, what he doesn't say is that he didn't see any contact between Officer Horton and the defendant. But if you look at his testimony, he was in a position to have seen it if it had occurred. He was behind Officer Horton. His attention was directed in that direction. He was looking at Officer Horton, pursued the defendant's mother, Beulah, onto the porch. Officer Braschka said he could also see the defendant, could see Horton and the defendant basically going towards Beulah at the same time. He said his focus was on that. There's no reason to believe that he looked away from that long enough to have missed this, any contact between Officer Horton and the defendant if, in fact, that occurred, and yet he did not see it. He saw nothing vindicated. Why didn't he see it? Well, we can hypothesize many different reasons, but I would submit that one of the most plausible explanations is that it simply didn't happen. In fact, if you look at Officer Braschka's testimony, it's really more consistent with the defendant's testimony. In fact, Officer Braschka could have been called in as a defense witness because he corroborates the defendant's verdict of the incident much more than he corroborates Officer Horton's. So for that reason and the reasons that I've given in the brief, I would ask this Court to reverse the conviction outright. But assuming that this Court decides otherwise, it's necessary to consider the cumulative prejudice from the trial errors. Now, again, the key point here is that the State's case hinges entirely on Officer Horton's testimony. This was by the State's own admission, and I think the trial court said words to this effect, if not these exact words. This was a credibility contest between Officer Horton and the defendant. As I mentioned, the defendant is actually corroborated by Officer Braschka, one of the State's own witnesses. The problem is with this credibility contest is that the trial court's errors made the contest unfair, and as a result, the verdict is not reliable. This was not a level playing field. One of the errors, which I will talk about in a moment, which is the one I want to dwell on the most today, kept the defendant from undermining Officer Horton's credibility. The other two errors unfairly damaged or diminished the defendant's own credibility. So basically, you didn't have a level playing field here. Now, as I said, one of the errors kept the defendant from undermining Officer Horton's credibility, and that error was this. The trial court barred the defense from cross-examining Officer Horton regarding the timing of his decision to seek authorization for the felony charge of aggravated battery. If you recall, this incident occurred on June 10th, I believe. The defendant was arrested at the scene and was charged with just a misdemeanor offense of resisting or obstructing Officer Braschka. This is what the defense wanted to cross-examine Officer Horton. They wanted to establish the date of the offense and the initial charges to prove that, as of the date of the offense, June 10th, Officer Horton was aware of the procedure for seeking authorization for a felony charge, but that, for some reason, Officer Horton did not seek felony authorization for some six weeks later, until the end of July. After Officer Horton had learned that the defendant's mother, Beulah, had filed a complaint against the Aurora Police Department in connection with this same incident. How is it an abuse of discretion? It's an abuse of discretion because this goes to the heart of the case, namely Officer Horton's credibility. And the reason why this is so damaging is that, without this evidence, the jury is considering Officer Horton's credibility against the defendant's credibility. The jury had no reason for concluding that Officer Horton was not telling the truth. You just said the same thing over again. My question is, where did the court not consider something or fail to acknowledge a defense argument at trial? Where is the abuse of discretion in weighing whether or not this was proper cross-examination? I think, frankly, the court misled, and I don't necessarily mean intentionally misled, but I think that the state and the court following the state's argument misunderstood what the defense was trying to do. The state and the trial court focused on whether this cross-examination was going to create a trial within a trial and was going to focus on not just the period between the incident and when Officer Horton decided to seek authorization for the felony, but rather on the period from the incident to when the charges were actually filed, which would include the time period after the officer sought authorization and the charges were filed. And that that would get into the internal decision-making process of the prosecutor and so forth. I don't think the trial court understood that... Did the defense make it clear? I think so. I think if you read the record, the trial attorney repeatedly said, Judge, we don't want this to be a trial within the trial. We're just trying to show that Officer Horton knew how to seek felony authorization, did not do that until after he learned of the complaint. And this gave Officer Horton, arguably, this is what the defense would argue to the jury, a powerful motive to testify falsely, to bring these charges by bringing a felony charge against the complainant, the person who filed the complaint against the police department, against that person's son. Without that, the jury really had no reason to, I shouldn't say no reason, but had less reason, obviously, to disbelieve Officer Horton. I think this is a legitimate area of cross-examination to show possible bias in order to testify. It was aggravated by the other two trial errors that I pointed out, and I don't think we need to really talk about those in great detail. The admission of the improper statements or the... What about the jury instruction? Well, the jury instruction probably does deserve at least some brief mention. It's clear that giving that instruction was error. According to committee comments in the case cited by the state itself, Brandon says that those committee comments should be followed. And basically, the committee comments say, and Brandon endorses... Should only be given at defense request. Exactly. Why isn't it harmless? How did that instruction highlight any differently the fact that the conviction came in? That's a good question. Obviously, it wouldn't keep the conviction from coming in, and it wouldn't keep the state from arguing it. And frankly, the committee comments, I wish they explained more as to why they gave the defendant the veto over this instruction. But I would suggest that they didn't do it without a reason. So they must have thought there was some potential prejudice that was latent in giving this instruction over a defense objection. And I think that when you refer to the defendant's prior conviction in the instructions, it might create the risk that the jury would rely on the defendant's prior convictions more than it otherwise would. Now, I realize the language in the instruction tells them, limits how they're supposed to use it. But it's a reference that reminds the jury of the prior convictions. And it may have been, I think, a plausible explanation as to why the committee comments give the defendants this veto, is that the committee felt that the defendant should have the decision as to whether to run the risk that the jury will use the prior conviction as substantive evidence or whether the jury has enough common sense on its own to realize that a prior conviction for some unrelated offense, in this case it was possession of a controlled substance, has nothing to do with guilt or innocence of the charged offense. So what's our standard of review with respect to the jury instruction? With respect to the jury instruction? Well, it's clearly error. The judge himself admitted that. Now, so the judge has no discretion whether to give this instruction over the objection of the defense. So it's a de novo? Yes, it's whether the error is harmless. And I would, again, emphasize, if this had been the only trial error, honestly, I don't think that I would be in a position to argue that this by itself was harmful, was so prejudicial that you would need a new trial. So you think it's cumulative error? Exactly. And particularly, of all the three trial errors, the one with the greatest weight is the first one, the limitation on the cross-examination of Officer Horton. That, I think, was very prejudicial. And obviously the other two errors couldn't help. Now, you know, how you assign weight to each of those, I don't think anybody can do with any kind of precision. But, again, this was, I submit, a close case. You have the word of an officer against the word of a defendant who was corroborated to a great extent by another officer. When you put the three trial errors together, I think there is enough prejudice to require a new trial. So for the reasons that I've given today and that I've set forth in the brief, I would, again, ask this court to first reverse the conviction outright because the evidence was insufficient. But if this court declines to do that, to grant Mr. Foltz a new trial because of the prejudice arising from the three trial errors taken together. Thank you. Thank you. Any questions? No. You'll have a chance for a reply. Thank you. Good morning, Your Honors. May it please the court? Counsel. The people are just going to briefly touch on the reasonable doubt argument as I think both defense and people fully flushed out that argument in the briefs. Most of the claims here have to do with the weighing of credibility assessments and inconsistency of testimony and conflicts in the testimony, all of which are in the province of the jury. All of these were pointed out to the jury, and it was not so unreasonable for the jury to weigh these inconsistencies. Since the testimony of each of the witnesses is extremely important, as your opponent points out, it's a credibility issue. How was it not error for the trial court to preclude the defense from cross-examining concerning the late filing of the felony? How was that not relevant? Your Honor, the trial court did not abuse its discretion in limiting this testimony. The trial court addressed this issue three times throughout the trial, and as defense counsel pointed out, the defense counsel did make clear what they intended to do with the testimony. The people, again, submit like they did at trial that this was a collateral issue. The claim here was of retaliation against the filing of a complaint by another of the arrestees, not the defendant himself. The people realized that the arrestee was his mother. However, this would have led to a trial within a trial dealing with you have a different party, the retaliation. You know, it's extending beyond the contact just between a direct animosity directly between the defendant and the officer who made the claim. And because of the remoteness and the confusion of issues and the tenuous relevance here, the trial judge, in the three times he addressed this issue, did not abuse discretion. Waited carefully and realized that the limitation was necessary to prevent an additional trial going on as to why there was attenuation between one charge versus another. There are two issues here that Justice Shasta raised, and the way she raised the question, you really didn't answer it, at least not in my opinion. And the question that she asked was, was it an abuse of discretion to prevent the defendant from inquiring? And your response was that this would have created a trial within a trial and some other rationales for why no discretion was abused, but you didn't answer the question. I don't think and I'd like you to answer it more specifically. Did the defendant have the right to inquire as to any bias or prejudice or any motive for the witness to lie? And if the answer is yes, then we go to the next step, which is how far into this do we go? The defendant does have a right to inquire into bias or motive to testify falsely. However, the trial judge, to answer, to go into the second question, the trial judge may impose limits on that questioning. But the judge didn't impose any limits on any questioning, didn't allow any questioning at all, correct? That is correct, Your Honor. And in the three times that the issue was addressed, it appears that the trial judge did go into where this questioning would lead and was concerned right from the start of asking at all into a retaliation against the mother that this would... be... it was based on concerns of confusion of the issues and relevance. The fact that the state could make the argument doesn't mean that the jury would have to regard it as an instruction, which would be more binding on them, would they? I'm a little... Isn't there an instruction that says that arguments are not to be considered directions or instructions that are not binding on you, the jury? So there is a difference between arguing the point and an actual instruction telling them that they can or should do this or that? I'm sorry, are we still talking about the same issue or are we talking about the 3.13? I'm just a little confused on what issue. We're talking about his prior felony. Okay. Sorry, I just wanted to clarify. I'm sorry, can you ask that one more time now that I'm in the break? Isn't there a distinction or a difference between a jury instruction, which the jury is supposed to follow, as opposed to a closing argument, which the jury has admonished that it's argument and that they don't necessarily have to comply or follow it? That is correct, Your Honor. And the people do not deny that the trial judge should not have given this instruction. I personally don't understand. I don't think anybody understands why this... The state basically confessed error at the proposed trial. And the judge actually confessed error at the trial and said that it was harmless error. He kind of said, oops, I shouldn't have done that. Why is it harmless? The instructions did not misstate the law. And the defendant has not shown prejudice from this. I think the defense points out the same kind of question that the people have, as obviously the committee had a reason to do this. However, what their reason for in giving the defendant the option of not having this instruction, when it appears to be more beneficial to receive the instruction than not, as to limiting how the defendant... That's your perspective on it. But the question is, why isn't this harmless error? The fact that you view it and say, gee, this helped him out, I think there's a different point of view on that. I mean, it's his decision. It is his decision. And... The defendant has not shown how he has been prejudiced by the error. And that is his burden in overcoming. There is no prejudice to the defendant that, especially after the people in their closing argument did point out his prior conviction, obviously realizing that an argument is different than an instruction. But to limit how that can be considered did not prejudice the defendant in this case. Do you consider the evidence closely balanced? As to the aggravated battery charge, it did come down to a credibility between two individuals involved. It did come down to more than just two. Wasn't it the defendant and many of the police officers at least corroborating in a non-affirmative way because they said they didn't see it happen? In other words, they did not corroborate their fellow officers. So essentially this was one officer's testimony against the defendants and the inferences to be drawn based upon the circumstances are that it didn't happen if you follow the other police officer's testimony. So this is more than just a closed case. This is a case where the testimony, as Mr. Rogers said, was the only thing that any trier of fact could base its verdict or its findings on. So this is about as close a case as you can get. As to the aggravated battery charge and as the obstruction charge is not raised on appeal. So if the evidence is very, very closely balanced, does that not increase the probability that the result might be different on retrial? As far as are you looking at this from a cumulative error or from an individual? You stumped me. I'm not sure I understand the question. Because as defense pointed out as to the last issue, the instructional issue, that he indicated that it by itself would not be so prejudicial. The instructional issue seems to go directly at the credibility and directly affect and substantially affect the credibility of the two witnesses. The one who affirmatively said it did not happen and the police officer said that it affirmatively did. And then you can have, as an aside, the police officers who indicated they didn't see anything, but that doesn't necessarily mean it didn't happen. So this instruction, based upon the facts in this particular case, go to the heart of the matter, which is which of the two are telling the truth? Now, if it was some third party or there were multiple witnesses, multiple officers or whatever said this, then it wouldn't be a closed case and harm was there. It might be more self-evident. It's kind of hard to prove prejudice. I like to think in the layman's term, prejudice means I was found guilty and I was sentenced to a place I didn't want to go. So I've been prejudiced. But in any event, you may continue. Your opponent believes that he can distinguish people versus Brandon. That's the case you're relying on. What's your position with respect to that case? Apparently and obviously you believe that that is your strongest case. And with respect to your position on the idea. The difference in Brandon factually was there was an additional witness testifying witness who also had a conviction. And there were then the three, I believe the three jury instructions were given about weighing credibility. Using the prior conviction of a testifying witness and then the error of adding the additional 3.13, which was the prior conviction of the defendant. And now I'm assuming the court found it was harmless. And it said that the unusual circumstances of this case. And I'm guessing since they didn't explicitly say what was so unusual about the case was the additional witness had the prior conviction. However. In. OK. I guess I guess it's still it's still I think that even even under these circumstances in Brandon, I think that. This boilerplate case law looked at in Brandon at page 364 is error in jury instructions harmless where the general instructions taken as a whole correctly and fully instruct the jury. So the people submit that regardless of whether the additional instruction was given as to the witnesses prior conviction as opposed to defendants taken as a whole. This jury in the instant case was still correctly and fully instructed. Regardless of the fact that the committee notes say it's the defendant's choice. That is correct. Your Honor, the people would still say that this can be addressed for harmless error. Even even in the absence of. An additional witness who may have a prior conviction. How about with respect to cumulative error as your opponent argues. As to cumulative error in looking at, I believe it's Johnson and blue. When they look at cumulative error, they're looking for a systematic pervasive pattern of unfair prejudice and in those cases specifically more leaning toward prosecutorial misconduct. And the people submit that this is not a case where it was so pervasive. That it would lead to cumulative error. Thank you. Do you wish to reply? Yes, thank you. Now, first. Just starting with the general principle of. Excuse me. The general idea of cumulative error. It doesn't. It may have arisen mostly in the context of a pattern of prosecutorial misconduct, but I think it. Almost so evidently applies when you have multiple trial errors of any kind that you cannot look at them in isolation. You have to take the entire context of the case. And the ultimate question is whether the verdict is reliable. The number of trial errors and the effect that those trial errors taken together had on the process. You know, it's just as McLaren pointed out from the standpoint. The prejudice consists in being found guilty. And if you want to try to parcel out in a portion, well, this error was this much. So you just treat everyone individually. That slants the analytical process so much in the state's favor that it would be extremely difficult to get a reversal. Now, to talk about the IPI issue and the state's reference to Brandon and its quotation from Brandon about how it's harmless if the jury instructions are otherwise accurate. Take that to this logical conclusion, and that would mean giving this instruction over the defendant's objection would never be prejudicial, which is absurd. Because the committee obviously wanted the defense to have some choice. Well, how about the facts of Brandon in court? And Brandon found that it was a harmless error. And I feel by reading it that the facts of Brandon seem a little bit more egregious than the facts here. How do you distinguish? Brandon is a, in Brandon, the state's own witness, this was on a robbery case, and the convenience store clerk testified, and he also had a prior conviction. So the general instruction that a prior conviction for a witness is admissible only for purposes of impeachment, that was going to come in. The defendant doesn't have the control over that, couldn't keep that out. Because that instruction doesn't distinguish between witnesses and defendant, in the jury's mind, maybe that, that instruction applies equally to the defense. So there was no way in Brandon that the jury would not have been informed of the general principle that prior convictions are limited to impeachment, and that would have applied to the defense as well. So they're looking at that instruction anyway. Exactly, and the point of giving the defendant the veto over 3.13 is where you aren't going to have that instruction given anyway. It's up to the defendant to decide. And, you know, I think you have to assume that the committee comments gave the defendant the veto right for a reason. And it necessarily means that giving the instruction over the defense objection is wrong and harmful in some abstract sense. And then you have to consider whether, looking at the cases in entirety, whether the prejudice from that error combined with prejudice from many other errors requires a new trial. And that leads me to the last thing, if I may just have a minute or two to talk about the cross-examination question. The court asked about where the abuse of discretion occurred, and I think the abuse of discretion occurred in exactly not understanding the scope of the cross-examination that was intended. And proper exercise of discretion would have been to say, yes, counsel, defense counsel, you may inquire as to that. I can see the relevance of it. Obviously, if the officer waited to bring a felony charge, had to ask for felony charges to be brought, until after he found out that the defendant's mother had brought this complaint, that would give the officer a reason to put pressure on the defendant's mother by bringing a felony charge. The defense never made an offer of proof or ever offered to make an offer of proof or asked to make an offer of proof in this case. That's true. There was no formal offer of proof, but I would point out three things. First, I think that what the defense counsel said as an officer to the court can't be discounted. The state, as far as I recall, never disputed that the facts were as defense counsel was stating, namely, that there was a complaint, that the officer didn't make the request for the felony authorization until after the complaint, and so forth. And finally, the defense, I'm sorry, the state has not argued that because there was no offer of proof that the issue has been forfeited. So, I know my time is up, and I appreciate the court's indulgence. Unless there are any more questions. All right. Thank you very much. Thank you. The decision will come in due course.